CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, and Howard McDougall, Trustee, Plaintiffs,

v.

COMPREHENSIVE CARE CORPORATION, a Delaware corporation, Defendants.

No. 93 C 3289.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 3, 1994.

Joan P. Simmons, Francis Joseph Carey, Neal S. Deodhar, Central States Law Dept., Rosemont, IL, for Central States, Southeast and Southwest Areas Health and Welfare Fund, Howard McDougall.

Gerald G. Saltarelli, Renton Douglass Bond, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Comprehensive Care Corp.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States") and Howard McDougall, trustee for the Fund, have brought suit against defendant Comprehensive Care Corporation ("CompCare") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* and federal common law to recover benefits Central States allegedly paid CompCare in error. Defendant now moves to dismiss for lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the motion to dismiss is granted in part and denied in part.

### Background [1]

Central States is an Illinois-based multiemployer ERISA health and welfare plan. Howard McDougall is a trustee of Central States. Defendant CompCare is a health care provider, offering a variety of health services, including inpatient treatment of alcoholism, to its patients.

At all relevant times, Lawrence Reister was a participant in the Central States Health and Welfare Plan. Under the terms of the Plan, Central States provides coverage

---

[1]. For purposes of this motion to dismiss, the court accepts all of the facts alleged in Central

to a participant's spouse as a covered dependent. This coverage ends on the last day of the week in which the spouse ceases to be legally married to the covered participant. Lawrence Reister and his wife, Deanna Reister, were divorced on April 10, 1989. As a result, her coverage under the plan ceased April 15, 1989.

Shortly after her divorce, Deanna Reister received inpatient treatment for alcoholism at CompCare. The treatment lasted from April 21, to May 15, 1989. It cost $9,766.55. In lieu of payment in full, Deanna Reister assigned CompCare any rights she had to receive payment for the treatment from the Central States Plan.

At the time CompCare provided Deanna Reister with treatment, CompCare knew Reister had recently been divorced and that she was not eligible for benefits. Despite this knowledge, CompCare sent Central States a bill for the treatment. Unaware that Deanna Reister and her husband Lawrence Reister had divorced, Central States paid CompCare benefits of $9,766.55 in violation of the express terms of the Plan.

On June 27, 1989, Central States learned that Lawrence and Deanna Reister had divorced prior to her treatment at CompCare. In a letter, dated July 19, 1992, Central States demanded return of the overpaid funds. CompCare refused, and this suit followed.

### Discussion

#### I. Count I—The ERISA Claim

##### A. Subject Matter Jurisdiction

Plaintiffs claim that the court has subject matter jurisdiction over this case under 29 U.S.C. § 1132. This section provides in relevant part:

A civil action may be brought ...

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to re-

---

States' Second Amended Complaint as true.

dress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3). Under a plain reading of the statute, this case appears to fall well within the scope of subsection (3)(B). It is a civil action brought by a *fiduciary* (trustee McDougall) to obtain *appropriate equitable relief* (restitution) to *redress a violation of the plan* (the mistaken payment to a non-beneficiary) *and to enforce the terms of the plan* (Article V, § 5.03 of the Plan).[2]

Defendant, however, asserts that ERISA's grant of jurisdiction extends only to suits against parties to the Plan, not defendants like CompCare who have never agreed to the Plan's terms. Defendant finds support for this proposition in a footnote in *Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229 n. 4 (7th Cir.1988), where the court stated simply: "[s]ection 502(a)(3) does not apply to suits by fiduciaries to recover money that they paid to outside entities in violation of the terms of ERISA or the plan". If controlling, this statement would clearly bar Central States' ERISA claim.

While recognizing the unequivocal nature of the court's statement in *Connors*, this court nonetheless finds that the question presented here has not been definitively answered by the Seventh Circuit and remains open for this court to decide. Initially, the court notes that the quoted passage from *Connors* is clearly dictum. The plaintiffs in *Connors* had not properly raised section 502(a)(3) as a jurisdictional basis for their suit. Moreover, in the actual text of the opinion, the court found that even if jurisdiction would have been proper as a general matter, the plaintiffs' suit was barred by the exclusive jurisdiction provisions of another statute. *Connors*, 858 F.2d at 1230. Equally important, the court finds it difficult to reconcile defendant's reading of the dictum in *Connors* with the Seventh Circuit's more recent decision in *Winstead v. J.C. Penney Co., Inc.*, 933 F.2d 576, 579 (7th Cir.1991). In *Winstead*, the court held that jurisdiction was proper under section 502(a)(3) in an action by Central States against another ERISA plan, who like the defendant here, was not a party to the Plan the suit was brought to enforce.

In this court's view, a more reasoned approach to this question was provided by the Eleventh Circuit in *Blue Cross and Blue Shield of Alabama v. Weitz*, 913 F.2d 1544 (11th Cir.1990) and by the court in *Iron Workers Welfare Fund v. Jefferson Davis Memorial Hospital*, 1990 W.L. 150124 (E.D.La.1990), two of the few courts to have expressly dealt with the issue.[3] In *Weitz*, plaintiffs brought suit against a physician under 29 U.S.C. § 1132(a)(3) to recover payments for services that were rendered by non-physician members of his staff. Under the Plan, only services provided by physicians were compensable. Even though the defendant physician was not a party to the plan, the court held that jurisdiction under § 1132(a)(3) was proper. As the court explained, nothing in the express language of § 1132(a)(3) places any limitations on the type of defendant against whom an ERISA enforcement suit can be brought. *Id.* at 1548. Relying on a plain reading of the statute, the court found that § 1132(a)(3) suits against third parties are clearly appropriate where necessary to redress a violation of the terms of the Plan or to enforce the Plan. Since the Plan in question only allowed for payments to physicians, the court found that the challenged reimbursement for work provided by non-physicians necessarily constituted a violation of the Plan redressa-

**2.** Article V, § 5.03 of the Plan provides: "Whenever this Plan has made benefit payments which exceed the amount of benefits payable under the terms of this Plan, or which any Other Plan was required to make under Section 5.01, the Fund shall have the right to recover the amount of such payments from any persons receiving such payments or from any Other Plans having primary responsibility for the payments of benefits."

**3.** As defendant repeatedly notes, a district court in Mississippi has also addressed this issue, finding that Section 503(3) of ERISA does *not* allow a plan fiduciary to bring an enforcement action against a non-party to the Plan. *National Benefit Administrators, Inc. v. Mississippi Methodist Hospital and Rehabilitation Center*, 748 F.Supp. 459 (S.D.Miss.1990). This court rejects the rationale espoused in *National Benefit* for the same reasons it finds the *Weitz* and *Iron Workers* cases persuasive.

ble through an action for restitution under § 1132(a)(3). *Id.* at 1542.

A similar rationale guided the court's decision in *Iron Workers.* The plaintiff Fund there had mistakenly paid the defendant Hospital for hospital care services provided to alleged beneficiaries of the Plan. After the Fund realized its error, it brought suit under section 1132(a)(3) to recover the payment. *Iron Workers,* 1990 W.L. 150124 at *1. As in *Weitz,* the court in *Iron Workers* rejected defendant's contention that the court had no subject matter jurisdiction over the case because the defendant was not a party to the plan. "[This case] involves a plaintiff suing a defendant to enforce the terms of the Plan to which they have a fiduciary duty. Such an action is specifically allowed in this circuit regardless of whether the Fund sues parties who are not fiduciaries." *Id.* at *1.

■ Like the courts in *Weitz* and *Ironworkers,* this court finds nothing in the express language of section 1132(a)(3) limiting the types of defendants against whom enforcement actions under ERISA can be brought. On the contrary, a plain reading of the statute suggests that Congress intended to empower fiduciaries, beneficiaries and participants to redress plan violations generally without regard to how or under what particular circumstances the Plan was violated. While Congress certainly may have anticipated that the vast majority of ERISA enforcement suits would be brought against parties to the Plan itself, nothing in the statute evinces any intention to preclude suits in those less typical cases, such as the one here, where the Plan violation arises out of dealings with non-parties. As the court noted in *Weitz,* allowing such suits would tend to preserve the integrity of ERISA-governed funds, a central goal of ERISA. *Weitz,* 913 F.2d at 1548. Finding that the instant suit was properly brought to enforce (read effectuate) the terms of the Plan and to redress a violation of the Plan, the court denies defendant's motion to dismiss Claim I for lack of subject matter jurisdiction.

### B. *Failure to State A Claim*

■ Defendant also moves to dismiss Count I of the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As defendant readily concedes, its motion to dismiss on this ground is almost entirely dependent on his construction of the governing ERISA provision—section 1132(a)(3). Having found that section 1132(a)(3) grants the court subject matter jurisdiction over defendant's claim, this court similarly finds that plaintiff has adequately stated a claim under this same provision. As noted above, there has been a violation of the plan, and taking plaintiff's allegations as true, defendant CompCare has been unjustly enriched as a result. Like the plaintiff in *Weitz,* plaintiffs here now seek the "equitable remedy" of restitution. The mere fact that defendant was not a party to the Plan is simply not dispositive. Defendant's motion to dismiss Count I for failure to state a claim is denied.

### II. *Count II—Restitution*

■ Count II of plaintiffs' Second Amended Complaint is for restitution under federal common law. As with Count I, defendant moves to dismiss on the grounds that this court lacks subject matter jurisdiction over the claim and that the claim fails to state a claim upon which relief can be granted. The motion is granted.

The Supreme Court has observed that "[t]he six carefully integrated civil enforcement provisions found in [§ 1132 of ERISA] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate separately." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). Nevertheless, courts have long held that reliance on federal common law may be appropriate in the area of ERISA, not to create new actions, but instead to fill in the many gaps or "interstices" in this "comprehensive and labyrinthine statute". *See UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America,* 998 F.2d 509 (7th Cir.1993); *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990). Thus, in *UIU,* the

Seventh Circuit held that a union-employer could maintain a restitution action under federal common law to recover excess contributions mistakenly made under the Plan. As the court explained, though ERISA permits plan trustees to return payments made to a plan which are the result of a mistake of law or fact, it does not establish a cause of action by which employers may seek to compel such a refund. Since, in the court's opinion, the broad preemptive reach of ERISA would not have allowed the employer-union to pursue its restitution claims in state court, the court found that recovery could be had under federal common law. "Absent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments." *Id.* at 513.

Here, in contrast, there simply is no gap to fill in. Under this court's reading of the statute, plaintiffs have an adequate statutory remedy for their restitution claim. Any "judicially-crafted" cause of action based on federal common law remedy would be superfluous. Accordingly, the court grants defendant's motion to dismiss Count II of plaintiff's Second Amended Complaint.

### Conclusion

For the foregoing reasons, the court grants defendant's motion to dismiss in part and denies it in part. Count II of plaintiffs' Second Amended Complaint is dismissed. A pretrial conference will be scheduled with the entry of this order. The parties should fully explore settlement of this matter prior to the conference.